oral argument not to be included and that is presided by Mr. Douglas Shearer. Good afternoon. May it please the court. David Douglas on behalf of the respondent appellate. Your honor, at this time I would like to request two minutes for rebuttal. Thank you. This court should reverse the judgment of the district court for two reasons. First, it was not clearly established at the time of petitioner's direct appeal that Tennessee's sentencing statute was unconstitutional. And second, even if it was clearly established, any error in this case was harmless. On the first point, Blakely says, so the Gomez case says that a jury only needs to find the fact if it mandates a higher sentence, correct? Yes, your honor. And Blakely, Justice Scalia says the statutory maximum is the maximum sentence the judge may impose based on facts reflected in the verdict or admitted by the defendant. So Blakely says may impose, Gomez reads that to be must. And it seems like Gomez is just patently wrong in reading may to be must. What am I missing on that? The Gomez court based its holding primarily on the Supreme Court's case in Booker versus United States in which Booker seemed to somewhat muddy the waters a little bit after Blakely. Because in Booker, they did emphasize that it was the mandatory nature of the federal guidelines that rendered them unconstitutional. And they even made a comparison to the sentencing statute at issue in Blakely. I guess Booker made clear that if a fact does mandate the higher sentence, the jury needs to find that. But I mean, it just simply doesn't elide the holding of Blakely in a more permissive regime that if it may result in a higher sentence, that's no good too. I mean, I just kind of think, I mean, shouldn't we hold courts to a little bit higher standard, you know, not be able to track that difference? I agree with you, Your Honor. But I think what's even more unique about this case is that you had three state Supreme Courts that were disagreeing with the interpretation of Blakely after Booker. And so the fact that there were this many number of state courts, I think, goes to show that the issue was not clearly established until this court decided, or until the U.S. Supreme Court decided California versus Cunningham. And that was the conclusion that this court reached in Allen versus Parker. So we would ask the court to again follow its reasoning in Allen because... You've made the best arguments one can make for that proposition, I would say. Thank you. So talk about, you know, whatever you want to talk about. Well, how about we go to harmless error? What is the test you would apply? For harmless error? Yeah. That whether the district court has grave doubt as to whether the jury would have found that the enhancement factor applied. Wait, whether we would have grave doubt? Yes, Your Honor, whether this court would have grave doubt. And what does grave doubt mean? Grave doubt is, I believe, when considering all of the proof presented at trial and... Limited to the proof presented at trial, correct? That answer may not be entirely clear. This court has, in recent cases, indicated that the proof may be limited to just that presented at trial, but the court has never explicitly made that conclusion, so... Why wouldn't it be? I mean, if it's not, if the proof's not at trial, I mean, why isn't it just irrelevant to this determination? Is there a reason? Because in Blakely, that's where the court said that you shouldn't enhance a sentence based on anything, not a fact not admitted by the defendant or presented at trial, so the fact that... No, it reflected in the verdict, is what they said. Yes, and there is still additional proof that would come forth at a sentencing hearing that might not come forth at trial, for example... Right, but this has to be presented to the jury, right? Right. So shouldn't we only consider the evidence that was confined in the trial record? In this case, yes, Your Honor. So considering that, grave doubt, do we... So what the O'Neill court said is, we mean that in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error. Yes. Right, so virtual equipoise. Okay, so you have two contradictory stories here. How do we decide which one's right without making a credibility determination, which I think you concede we can't do. No, Your Honor, the court is not here to make those credibility determinations, but the jury's verdict of second-degree murder shows that it only could have found that Petitioner committed this crime while he knew the victim was still alive. Second-degree murder requires a knowing killing. Doesn't mean she's conscious, though. No, Your Honor. Does not mean that she's conscious, but even if she was still unconscious, the facts remain that the defendant bound her hands, bound her feet, and then bound them together behind her back. That's terrible, yeah. And then it was at that point where he put the duct tape around her face. And so it requires a knowing killing, but isn't that different than the enhancement, which requires, doesn't it require cruelty or something? I'm not saying this wasn't cruel, but doesn't he have to intend cruelty, or am I wrong about that? Yes, Your Honor, he does have to intend cruelty for the enhancement to apply. And that exceptional cruelty is, I think, the exact wording of the statute. So his admission at whatever point that he had been cruel to her, like after she died or something, that's not an admission of extreme or whatever you just said, cruelty. Fair? Your Honor, it could be. It could be because he was the one who was responsible for this homicide. He knew all of the facts. And this factor can apply based on how a defendant acts after the killing. Why would it have been unreasonable for the jury to conclude, if they believed him, that he thought she was already dead? If they believed that he thought that she was already dead, then... Are you saying then that they could not have convicted him of second degree murder? Yes, Your Honor, that is what I'm saying. Because the blow that he says actually killed her would give rise to what crime under state law? That would be... If it... Arguably, just turning around when you're surprised in your own home and throwing a punch would not really give rise to a crime under state law at all. So the fact that the jury convicted him of second degree murder... That doesn't mean that they believe everything he says. They might have believed what he said about putting the duct tape on. It's unreasonable, as unlikely as that may sound. But they didn't believe that this was an accident, that he spun around, he's surprised, and his blow kills her. When there's no sign on her body that that happened. He doesn't recognize his wife's voice and thinks it's, you know, some intruder. Right. I mean, they could have rejected that part and thought very well. It was quite knowingly, perhaps, you know, he was trying to kill her in that fashion. But the only medical proof about the victim's death that was presented at trial was from the testimony of Dr. Harlan, who concluded to a reasonable degree of medical certainty that the victim's cause of death was asphyxiation. But he couldn't say she was... Okay, so let me walk through this. He couldn't say she wasn't unconscious when he put the stuff on, right? Correct. He could not determine one way or the other. Well, we take the double negative out, as I understand it. He said that he couldn't give an opinion as to whether or not this guy would have known that she was still alive at the time he bound her up. Yes, that is correct, Your Honor. And can I ask? Sure. And what you were saying is, because they convicted of second-degree murder, the jury necessarily thought it was a knowing killing. And he says he didn't think he killed her when he hit her, or at least that wasn't his intention. Yes. And so the only way it was a knowing killing is if the jury convicted him, rejected his assertion that she was unconscious, and convicted him of putting the tape around her mouth to kill her. Yes, Your Honor. If this was an epidephrin case, it might come to us a little bit differently, but do you agree that the state made no finding on harmless error? Yes, Your Honor, I do. They didn't need to get to that because they didn't find an error. That's right. They resolved the issue purely based on Gomez 1. But... So there's no deference if we got to that issue, is that right? To the harmless error issue? No, Your Honor, there is no deference because there's no state court decision. But when this court looks at the facts and considers that the victim was duct taped while she was 30 to 40 feet away from her children, and the defendant never sought medical attention, he prevented her from seeking any medical attention, in fact, when he bound her arms and legs. And then, again, with her children 30 to 40 feet away, that's when he took her body to the shed, and he left and attended a party with his new girlfriend. And there's no question, the facts are horrific. What about this aspect of Tennessee sentencing law that says the cruelty has to be, in a sense, gratuitous, that the cruelty can't be the manner in which he actually takes her life. It has to be something apart from whatever action takes her life. Yes. Why doesn't that disqualify, especially under your theory that she's still alive when she's duct taped, why doesn't that disqualify the duct taping? Because of all of the actions that Petitioner took before actually wrapping the duct tape around her face, and the actions that he took afterwards. I mean, where he binds her with the duct tape before, and then takes her to the shed, that stuff? Yes, Your Honor, that shows both a calculated indifference to her suffering. Yes, she's still alive, and certainly, if she's conscious. I mean, it just seems like your argument on harmless error is asking us to make a credibility determination, about him in particular. He says he thought she was dead, that she didn't appear to be conscious.  In the absence of any expert testimony that could support a contrary determination, just simply to reject that, and then ourselves find that she was alive, and she was able to perceive this pain. I mean, how do we do that as appellate courts? Again, all the court needs to do is look to the verdict of second degree murder, and the elements of second degree murder. Based on the proof presented at trial, the only way that the jury could have a second degree murder, is if they found that it was a knowing killing. And the only proof of a knowing killing was from the testimony of Dr. Harlan. So based on that, this court can review all of the facts presented at trial, and conclude that any error was harmless. I guess, again, why couldn't we speculate to the contrary, that they reject his very flimsy story, that he thinks an intruder's in the house, and they think that he really hauls off, and kills her then. I mean, is it just because the examiner said otherwise? Your Honor, I see that my time is up. Thank you. It's not just that the examiner says otherwise, but it's that petitioner's own version of events is just not supported by any of the proof. Is it refuted by proof? It's refuted by the proof that the victim's cause of death was strangulation, and that the medical examiner found no evidence of bruising, or any type of other physical injury. He found no evidence of blunt force trauma, is what he said. Yes, Your Honor, a blunt force trauma. So if there are no further questions, we would ask this court to reverse. Thank you. We'll hear from Ms. Mitchell. May it please the court, my name is Kasdan Mitchell, and I represent Mr. Owens. Just to pick back up on your questions, Judge Kethledge, about the constitutional issue, not only did the Tennessee Court of Criminal Appeals read may to mean must, which is contrary to that language, but I also direct you to footnote eight in Blakely, where Justice Scalia says, and this is a quote, whether the judicially determined facts require, in italics, a sentence enhancement, or merely allow it, the verdict alone does not authorize the sentence. And so I don't think that the court could have been any clearer that the Tennessee system, whether the enhancement was required or just permissible, ran afoul of Blakely. That was clearly established at the time of Mr. Owens' sentence. What standard would you apply for harmlessness? The grave doubt standard that my colleague talked about, and I think this court has clarified that that means if you're in virtual equipoise, then the court harbors grave doubt, or if it's evenly balanced. So why are we at equipoise if the jury convicted him of second degree murder? He duct taped her mouth and her hands behind her body. He took her out to the shed, which is independent of the killing. He did it 40 feet from, or whatever it is, from her children, which is independent of the killing. Why couldn't we say, we're not in grave doubt, the knowing murder was taping her and doing it in the presence of her children, and taking her to the shed to die was cruel, or extremely cruel? It sounds pretty cruel. So we don't dispute that the facts here are horrible. But I have a few responses on the law. So first of all, baked into the Tennessee Enhancement Statute, which is Section 4035-114, Tennessee law provides that in order to satisfy the exceptional cruelty enhancement, there have to be acts found on top of the elements of the offense. So the second degree murder conviction itself isn't sufficient to satisfy that enhancement. But even looking directly at the fact... Didn't Mr. Douglas respond to that? When he talks about taking her to the shed to die, and I guess the proximity to the kids could be taken into account. But I mean, just taking her to the shed to die, if in fact she's alive, that pretty much handles it right there. And Judge Ketledge, I understand. We don't contest that the jury could have found the presence of the exceptional cruelty factor. And that's what the Tennessee Court of Criminal Appeals, when they were examining the district court findings, said there's sufficient evidence here. And we're not making a sufficiency of the evidence argument. The thrust of Blakely and Apprendi is that that's a determination for the jury. So whether they could have found that those were the facts that happened, and that she wasn't dead until she reached the shed, that all turns on the credibility of Mr. Owen's testimony. And I appreciate everything you're doing. And it's great advocacy. But in a harmless error, I agree, it's for the jury. You're right on everything about the law. But if we're doing harmless error, and we're not sure, you lose, right? No, we win. Under this court's precedence, equipoise goes to the defendant. Even though Brecht applies here, which is a more state-friendly standard than we would be applying on direct review, my understanding of this court's precedent is that if it's evenly balanced, then the tie goes to the defendant. Wait, by grave doubt, we mean that in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise. So for an equipoise, you win. That's right. But if it even tilts a little, they win, right? That's right. But the tie, just to be clear, the tie under this court's case law goes to the defendant. So you're saying the evidence is sufficient.  In other words, you said the evidence is sufficient. For a jury to find this, if we agree with that, and I'm sorry, it's been a very poor question, but if we agree with that, that the evidence is sufficient for a jury to find it, then why doesn't the state win under the harmless error? Let me just explain a little bit what I mean by the difference in those two theories. So my understanding of this court's case law, and I don't want to get too down in the weeds of the sufficiency of the evidence, but that's not what's raised here. I was just trying to draw that distinction. But my understanding is this. If there's one witness testifying, and they say X, that the jury could be entitled to believe not X. And the court, under a sufficiency of the evidence analysis, would uphold the jury verdict. That's not what happened here. There are credibility issues at the heart of the harmless error question here. Why is that, if it's a knowing killing, if it's uncontested that he took her to the shed to die? Now, you contest whether he took her to the shed to die, so let me stop there. But it's uncontested that he taped her, and the medical evidence supports them. In other words, why are we making a credibility determination if we agree that the medical evidence supports them? So just to be clear about what the medical examiner testified to at trial, there wasn't medical evidence that she died of suffocation. He found no kind of bursted capillaries in her eyes or her mouth. The only thing that supported that finding was the presence of the duct tape. I mean, I guess in some ways that might be considered a medical factor. Why would you tape her mouth otherwise? So Mr. Owens testified that he did that because he didn't want to look at her face. Her eyes were closed, she was turning gray, and it was squarely within the jury's prerogative to reject that testimony or to accept that testimony. Okay, so this is the state's point. If they found a knowing killing, they're saying by taping her mouth, he killed her. That's not right. They could, just as your honors explained, disbelieve that he thought it was an intruder, that was random, and that he was startled and that he hit her kind of in the heat of the moment and believe that it was in fact his wife. But the examiner says that's not what she died from. That's right, and that's what he concluded she didn't die from. But he made no opinion about whether she was conscious or unconscious at the time she suffocated. And that's a relevant question for the sentencing enhancement. Did the defendant think he was killing her in a cruel way? If he believed that she was unconscious at the time, then everything he did after that, including taking her to the shed, binding her arms and legs, all of those were after she was dead and wouldn't satisfy the statutory enhancement. And I agree with that, so walk me back a second, because knowing killing, how if he's startled and he hits someone, is it a knowing killing? So I think that's what I was trying to get at. The jury might have disbelieved that he was startled and believed that he knew it was his wife who came in. He swung and hit her intentionally. And then he kills her. Go ahead. I mean, so he doesn't kill her when he hits her intentionally. He thinks he does. But then he deliberately duct tapes her, but he's not knowingly killing her there. That's right, so just to kind of lay out. So it wouldn't support the verdict. So it would, so let me just lay out what the jury would have believed. Because if he doesn't know, if he thinks she's dead, I'm not sure how that's knowingly killing her when he duct tapes her. And can I add one thing before you explain? Sure, yes. Which is, and the reason I think Judge Keplech's question is where I struggle, just to be candid with you, is if Judge Keplech's question is right or even close, then I can't say I'm an equipoise. In other words, what you're saying is we have to reject his credibility on the fact that he was startled for him to win. Does that make sense? That does make sense. Okay, so now explain, and then I'll be quiet, and then I'll come back. No, Your Honor, I mean, this whole exercise underscores, I think, why this is a Blakely violation. Because we're speculating what the jury could and could not have concluded. But let me just lay out a set of facts that the jury could have concluded that would be consistent with a secondary murder finding, but not an exceptional cruelty enhancement. Please do. So what they could have believed. And this requires them to have believed Mr. Owens in part and to disbelieve him in part. And that is certainly something that jurors do all the time. So they could have believed that Mr. Owens was not startled by his wife entering his home. He recognized her voice. He knew it was her. He socked her. She fell down, wet herself, lost her pulse, and started to turn gray. From his perspective, that was a knowing killing.  Can I stop you there? Yes, Your Honor. Aren't we making a credibility determination then? Aren't we guessing what the jury determined as to credibility? And isn't that what we're not allowed to do? Yes, which is why this is a Blakely violation and why it's not harmless. Yes, I completely agree with you. The smart part about your argument is every road ends at it's a Blakely violation. The hard part, right, is the Supreme Court has said we engage in harmless error analysis nonetheless. And when we engage in harmless error analysis, we necessarily have to weigh the evidence. And so I still feel like this is what you've got to convince me of. And you don't have to worry because you've got two others. But is that the harmless error analysis, this is where I weigh their way. Does that make sense? In other words, you need to get me to equipoise. And I think the more likely thing is the jury thought they rejected his credibility because they rejected the startled point. And they thought he taped her mouth, she died from that, and he was cruel by putting her in the barn. Which we all agree he was cruel if that's what he did. I don't think you can infer that from the jury verdict alone, which is why this is a Blakely problem. In part because the jury rejected a first degree murder conviction. So they believed him at least insofar as he didn't premeditate and intend to do this. So we do know based on the jury verdict that they believed him in part because they didn't convict him of first degree murder, they didn't believe him in part because they did convict him of something other than voluntary manslaughter. And those are just the credibility determinations that jurors are entitled to make and that are difficult for this court to do on a cold record and inappropriate for this court to do under Blakely. Let me just go back to something you said earlier when you're going one, two, three. One, he's not startled. Two, he punches her, she turns gray, he thinks she's dead. Three, he duct tapes her and you say that would satisfy knowingly, but it's not clear to me how that would be knowingly killing her when he doesn't know that that action is actually the cause of death. So he, I mean from his, from Mr. Owen's perspective, when he, and this is a version of the events that the jury could have believed. He knew it was his wife, he hit her. Right. And then he checked her pulse, she was dead. He knew he hit her, he knew that that was likely to cause her to die and all of the elements of knowing murder that you have to, the state has to prove for second degree murder. Checks her pulse, she's dead, her face is turning gray and she knows. No, I mean, you have to, before you take the action, you have to be substantially certain the action is going to have that result. Right. He did not, I mean, it's very dubious. He would have had that before he punches her. The testimony at trial would actually support that that was possible. So we know that she was a small woman, that he was a large man, and he works with heavy duty equipment. And he could have known that his strength when applying the blow that he applied to her was likely to, or would have, whatever the state law standard is for knowing. Substantially certain. Substantially certain. I mean, it's like, you know, you shoot someone in the chest and you're substantially certain that's going to kill them. You're also asking. The other fact that doesn't help you on that is that he was, he was mad at her at the time. So if in fact he knew who it was and she's coming up behind him, he's mad because she hadn't picked the kids up or whatever that was. So at least arguably he had a reason, if he did know who it was, to turn around and whack her. From his perspective. But I think he still could have knowingly thought that that was substantially certain to kill her, given his weight and who she was, and maybe even with the additional anger that was behind the blow. But wouldn't, if he knew who she was and he intended to hit her and he thought it would kill her, the jury would have concluded it was first degree murder. Right? They could have rejected that it was intentional and premeditated, but that it was knowing. Can I walk you through your three points? Because you say the jury would have to disbelieve him when he said he was startled. That's right. And the jury would have to believe him when he thinks she was dead. That's right. And I agree with you. This is an interesting analysis to do, but we have to do it. You're asking us to get you to equipoise for your story. You're asking us to make two determinations, one with his credibility and one against his credibility. So that's what the jury did based on the jury verdict, because they rejected a first degree charge and rejected a voluntary manslaughter charge. So we already know that they believed him in part and didn't believe him in part. So we're just really asking this court to do the same thing that the record supports the jury having done. Why is that true? In other words, it could have been none with the intent to kill, and he could have taped her nonetheless, right? I mean, he could have taped her and taken her to the bar and said, I'll deal with her later. I don't want to hear her during the party. The jury could have accepted that. The jury could have accepted that. They also could have accepted the alternative set of facts that I just laid out. And the point is the court just simply cannot know, and that puts it in equipoise and supports a harmless error finding. But I want to make one quick point, Your Honor, to judge the part of your question, to my colleague, which was about, are we limited to only the facts presented at trial? And that is, there is language in this court's opinions to that effect. But I also wanted to draw the court's attention to both Villa Garcia and Lovins, where there was a separate question. The court asked whether he was likely to receive the same sentence on resentencing. And I would encourage the court to look at those cases because the court said we simply cannot know what would happen on resentencing. One of those was a Tennessee case. And Tennessee has now revised its sentencing statute. It's a completely indeterminate system. And so there's really no way to know what the judge would do on resentencing. Do you think we can look beyond the trial record? In the harmless error question? I do think you can under that lens. And there's one thing. This was not in our brief, and I don't think we need it to prevail on that standard. But I did want to draw your attention to it. It's in the record. Dr. Harlan, the medical examiner, his license has since been permanently revoked by the state. So that would certainly be a credibility issue that would be something the state would have to deal with at resentencing. I'll just direct you to the record site since I apologize it wasn't in our brief. It's 1028 at 2616. It was in our record excerpt. So you're dividing up the harmless error analysis into two different prongs. One is would a jury have come to the same conclusion anyway? The other is would the sentence have been the same? That's right because this court has language and opinions that aren't clear exactly what the inquiry is. And under either of those lenses, we think that we satisfy the harmless error standard The second lens can't possibly be used to determine the validity of the first lens. How can you add in new facts that were not brought out at the trial to determine what the jury would have done had it been submitted to them if they didn't have the facts? I see that my time has elapsed. No, that's okay. Go ahead. Judge McKee, I completely agree that when you think about a Blakely error and what the jury would have found, that you're limited to the trial record. And we think that with only two witnesses testifying about this and it turns on credibility, that is straight down the fairway of harmless error. But just this court has stated in a couple of cases that the relevant question is whether he would be resentenced to the same sentence. And I just wanted to raise that for the court in response to Judge Thapar's question and encourage a finding of harmlessness under that lens as well. I mean, this case is a little different from, I guess, just a pure credibility determination on our part because you do have the second degree murder finding which requires that he knowingly kill her. And so the question is, how much can we infer from that knowingly mens rea finding on the jury's part? I mean, if we think, and I guess like Judge Thapar said, I mean, we have to just sort of weigh the likelihood of these scenarios. If we think it's really unlikely that he had a knowingly state of mind when he punches her, then the only other place where we can have knowingly is when he duct tapes her. In which case, that finding is really going a long way towards, duct tapes her knowing that she's alive. That would be the scenario. And when you add some of the circumstances around the duct taping, the manner of it, taking her where he took her and all that, I mean, that knowingly can go a long way towards he did this knowing she's alive with these other circumstances that are pretty aggravating. Just two quick points. Sure, please. 4035114 says that in order to support the exceptional cruelty enhancement, there have to be acts in addition to the elements of the crime. Can you say that more slowly? Yes, sorry. I'm out of time, so I wanted to be quick. We're not going anywhere, so just, yeah. So Tennessee Code 4035114 and the state cases that have interpreted it that say that in order to find the exceptional cruelty enhancement, you have to make a finding in addition to the elements that satisfy the conviction. So there is some constraint on the facts that the court can consider. Taking her, you know, out to the shed as she's expiring. To die while the party's going on. That's right. And then the second point I wanted to make is to the extent that you think that his version of events aren't likely or that something else is more likely, those are credibility determinations that is in the heartland of what Apprendi and Blakely were trying to protect a defendant from having a judge decide. I understand. Can I ask one question on that? Yeah. And I keep coming back to this, but you're asking us to get you to equipoise to make credibility determinations in your favor. And one is that your client's not credible when he says he was startled. And the second is that he is credible when he says she's unconscious. Because we're making a determination that he's credible in that regard. Does that make sense? I understand what you're saying. I don't think that we're asking you to make those credibility determinations. The only point I was making is that that is a set of credibility determinations the jury could have made to support the theory that both the second degree murder conviction and Mr. Owen's testimony. And so back to my very inartful question at the beginning, if I'm not at equipoise, you lose. Right? So if I don't believe that story is as plausible, to use your words, as the story, what I believe, he taped her up and covered her mouth to kill her, you lose. So I think, and maybe this is where there's a disconnect, it's not equipoise about the facts, it's equipoise about whether the error caused a substantial and injurious effect on Mr. Owen's. And maybe that's a distinction without a difference, but the way I view it is that it is a little different. You're not putting yourself in the jury's shoes having to make these credibility determinations and only if you're in equipoise do we win. It's equipoise about whether the error created a harm to Mr. Owen's. And maybe that's the disconnect that we've had during this discussion. I apologize for not being clearer about that. But I do think that there's equipoise about the harmlessness of the error in light of the limited testimony and the fact that so much of it turns on credibility. That's really the key to your argument. That's right. You have to tie it back to the substantial and injurious effect. That's right. And even though Brecht is more state-friendly than the direct review standard, I mean, it's still a harmless error question. It's still on the state to prove that the error did not harm, did not substantially affect Mr. Owen's rights. And so, just to be clear, it's not a state-friendly standard, it's just more state-friendly than this court would otherwise apply once it's found a constitutional error. Just a real brief answer on this. Yes, Your Honor. Do you think that if the jury believed she was still alive when he duct-taped her, that the jury would have been able to or very likely would have found him guilty of first-degree murder instead of second under Tennessee law? I don't know because there wasn't evidence, I don't think, to support that. Let me just make sure I understand the question. So that if they believe that he duct-taped her and that's what killed her. So first-degree murder requires some premeditation? That's right. And it's intentional? That's right. And I'm not sure they would satisfy, they would have found premeditation in that case. Really? I mean, I thought premeditation can be like a moment. You were changing the facts a little bit from Judge Kethley's court. I apologize for that. The question, as I understood it, was if the jury concluded that she was alive and he knew she was alive when he duct-taped her, then wouldn't they have convicted him of first-degree murder? Yes. It only takes a moment. I think they still could have convicted him of second-degree murder because it was knowing that they may have been able to find intent and premeditation sufficient under Tennessee law to convict for a higher sentence. We just don't know. Maybe they were at the low end of second-degree murder or maybe they were almost to first degree and just didn't quite get there and there's just really no way to know. It would have been a compromise. Okay. Thank you, Your Honors. Thank you for your argument. We'll hear a rebuttal. A brief. Well, say what you want to say. May it please the Court. Just one brief rebuttal point about Dr. Harlan and losing his medical license. That was an issue that was raised in Mr. Owens' post-conviction proceedings and came out that he lost his medical license actually six months after the trial in Mr. Owens' case. And trial counsel was actually found to not be ineffective for failing to pursue this issue because it would not have been available to him at the time. So the fact that he did lose his medical license should not impact this Court's assessment of his diagnosis in this case. So we would ask this Court to reverse the judgment of the District Court granting habeas corpus. Very well. Thank you both for your arguments. Yeah, of course. Ms. Mitchell, obviously you've been appointed pursuant to the Criminal Justice Act and you've done an exemplary job. We genuinely appreciate your service. The case was very well argued today on both sides. So thank you both and the case will be submitted.